OPINION *Page 2 
{¶ 1} On February 12, 2000, appellant, Jason Holden, and appellee, Lois Holden, were married. Three children were born as issue of the marriage, Anna born June 20, 2000, Erin born August 27, 2002, and Adam born August 22, 2005. In December of 2005, both parties filed complaints for divorce. The complaints were consolidated.
 {¶ 2} The matter was heard before a magistrate on October 11, and November 27, 2006. By decision filed December 21, 2006, the magistrate recommended a property division, and named appellee as the residential and legal custodian of the children. Appellant filed objections. A hearing was held on January 31, 2007. By judgment entry filed February 12, 2007, the trial court approved and adopted the magistrate's decision with minor modifications not pertinent to this appeal. A final judgment entry of divorce was filed on March 13, 2007.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT ABUSED ITS DISCRETION IN NAMING THE APPELLEE THE PRIMARY RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE PARTIES' MINOR CHILDREN WHERE DOING SO IS NOT IN THE CHILDREN'S BEST INTERESTS AND THE APPELLEE MADE A CONCERTED EFFORT TO BE UNCOOPERATIVE AND NOT COMMUNICATE WITH THE APPELLANT." *Page 3 
 II {¶ 5} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT A SIGNFICANT (SIC) PORTION OF TWO MARITAL ACCOUNTS WAS THE APPELLEE'S SEPARATE PROPERTY WHEN THE APPELLEE FAILED TO ADEQUATELY TRACE HER CO-MINGLED SEPARATE PROPERTY PORTION IN SAID ACCOUNTS."
 I {¶ 6} Appellant claims the trial court erred in denying his request for shared parenting or to be named the residential parent. We disagree.
 {¶ 7} Child custody determinations lie in the trial court's sound discretion. Masters v. Masters, 69 Ohio St.3d 83, 1994-Ohio-483. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983)5 Ohio St.3d 217.
 {¶ 8} R.C. 3109.04 governs the award of parental rights and responsibilities. In allocating parental rights and responsibilities, the trial court "shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1). Subsection (F)(1) states the following:
 {¶ 9} "In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 {¶ 10} "(a) The wishes of the child's parents regarding the child's care; *Page 4 
 {¶ 11} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 12} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 13} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 14} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 15} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 16} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 17} "(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; *Page 5 
whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 18} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 19} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 20} Appellant filed a shared parenting plan pursuant to R.C.3109.04(G). Pursuant to subsection (G)(1)(a)(iii), a trial court may adopt, reject, or make changes to the proposed plan. In determining whether to adopt a shared parenting plan, a trial court must consider whether it is in the children's best interest pursuant to R.C.3109.04(F)(1) cited supra, and R.C. 3109.04(F)(2) which lists the following:
 {¶ 21} "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 {¶ 22} "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 {¶ 23} "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent; *Page 6 
 {¶ 24} "(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 {¶ 25} "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."
 {¶ 26} It is obvious from the mutual acrimony that the issue of parental cooperation required by statute is not present sub judice. In his decision filed December 21, 2006 at Finding of Fact No. 21, approved by the trial court, the magistrate found, "Both parents appear likely to honor companionship, but the parties have a relationship of mutual suspicion and distrust, rendering real cooperation in raising the children unlikely." The magistrate further found at Finding of Fact No. 30, "The GAL recommended Defendant to be custodian, with no shared parenting, due to Plaintiff's lack of judgment, and the inability of the parties to cooperate." In Conclusion of Law Nos. 2, 3, and 4, the magistrate determined the following:
 {¶ 27} "2. Plaintiff's lack of sound judgment regarding exposure of the children to Beth Bender reflects poorly on his ability to act as residential parent in the children's best interests.
 {¶ 28} "3. Plaintiff's behavior to the former child care provider, and his unusual behavior regarding the dating of stored, soiled diapers renders his ability to act stably as residential parent problematic.
 {¶ 29} "4. Comparing the demonstrated ability of each party to act in the best interests of the children, Defendant has provided the children with more structure and more stability, leading the Court to conclude that Defendant should be residential parent of the children." *Page 7 
 {¶ 30} Appellee was opposed to the shared parenting plan because she did not believe it would work in practice. October 11, 2006 T. at 24-26; November 27, 2006 T. at 51. Appellee testified although the parties should be able to cooperate and communicate, she wished to be the residential parent. October 11, 2006 T. at 26-27. Appellant agreed they were cooperating and communicating better. Id. at 59, 65; November 27, 2006 T. at 51-52. Appellant was upset that appellee had fired his mother as the daycare provider, and did not approve of the subsequent provider. October 11, 2006 T. at 37-38. Appellant is now satisfied with the current daycare provider. Id. at 41.
 {¶ 31} Each party does not claim that the other is a bad parent that is unconcerned or not involved with the children. Id. at 45-46. Appellant's argument against appellee as the residential parent is based upon past communication issues addressed via the temporary order. Id. at 69-70.
 {¶ 32} In his June 14, 2006 report, the guardian ad litem specifically recommended against shared parenting. We have reviewed the fourteen page report and find it to be historically truer vis-à-vis the trial testimony, and insightful as to the emotional toll on the parties and the children given the circumstances surrounding the separation.
 {¶ 33} Based upon these insightful observations over the course of the divorce and our own review of the record, we find the trial court did not abuse its discretion in designating appellee as the residential parent.
 {¶ 34} Assignment of Error I is denied. *Page 8 
 II {¶ 35} Appellant claims the trial court erred in designating a significant portion of appellee's 401K and the parties' Pacific Life Annuity as her separate property. We disagree.
 {¶ 36} In dividing property, the trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case. Cherry v. Cherry (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Blakemore.
 {¶ 37} Separate property is defined in R.C. 3105.171(A)(6)(a) as follows in pertinent part:
 {¶ 38} "(6)(a) `Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 39} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 {¶ 40} "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage."
 {¶ 41} R.C. 3105.171(A)(6)(b) states, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable."
 {¶ 42} Appellant argues although appellee's premarital portion of her 401K was $67,759.33 (Defendant's Exhibit X), and the value as of June 30, 2006 was $111,924.24 (Defendant's Exhibit Y), the trial court erred in determining the marital portion to be *Page 9 
$44,165.00. Appellant argues there was no accounting for the variations in the stock market. Potentially, the marital portion could be greater or smaller given market fluctuation. As noted, the 401K was valued in units. We conclude in the absence of any credible rebuttal to appellee's valuation, the trial court did not err in using an arithmetic solution to the issue.
 {¶ 43} Appellant also argues the Pacific Life Annuity was not traced to establish it was appellee's separate property. Appellee testified the annuity was transferred to Merrill Lynch in the parties' joint names. November 27, 2006 T. at 65-66. Appellee evidenced this tracing of $31,489.78 as separate premarital funds in Defendant's Exhibits AA and BB. No evidence was offered to rebut these calculations.
 {¶ 44} Upon review, we find the trial court did not abuse its discretion in accepting appellee's testimony in the absence of any evidence to the contrary.
 {¶ 45} Assignment of Error II is denied. *Page 10 
 {¶ 46} The judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is hereby affirmed.
 By Farmer, J. Gwin, P.J. and Edwards, J. concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is affirmed. *Page 1